IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


COREY D. JONES,

                    Plaintiff,

          v.                              CASE NO.  06-3200-SAC

M. BERHANE, et al.,

                    Defendants.

MEMORANDUM AND ORDER

     This civil complaint filed pro se by a federal prison inmate
was transferred to this district by the United States District Court
for the Southern District of Indiana.  Plaintiff's motion for leave
to proceed in forma pauperis (Doc. 2) was not decided prior to the
transfer.   The court reserves judgment on this motion because it
does  not  appear  that  plaintiff  has  exhausted  administrative
remedies[1].

     Plaintiff claims he is entitled to damages for negligence,
medical malpractice, and deliberate indifference to his serious
medical needs.   He alleges the events underlying his complaint
occurred while he was an inmate at the United States Penitentiary,
Leavenworth, Kansas (USPL).  He is currently confined in the United

---

[1]

     42 U.S.C. 1997e(a) pertinently provides, "[n]o action shall be brought"by a prisoner with
respect to prison conditions under any federal law "until" available administrative remedies are
exhausted.  If this court were to grant leave to proceed in forma pauperis at this preliminary juncture,
and then determine that plaintiff has not exhausted, plaintiff would be obligated to pay the full filing
fee herein of $350.00 in installments taken from his prison account, even though this action would
also be dismissed for failure to exhaust.  Then, if plaintiff filed another action raising the same claims
after exhausting administrative remedies, he would again be required to pay the filing fee in full,
either at the outset or in further installments.  To avoid this double indebtedness, the court will not
allow plaintiff to proceed with this action in accord with the language of Section 1997e(a) unless
administrative remedies are shown to have been exhausted.  It does not necessarily follow that this
court will treat any action submitted in the future by plaintiff in the same manner should he again fail
to meet the exhaustion prerequisites set out in statutes and regulations as described herein.

States Penitentiary, Terre Haute, Indiana.

**<u>DEFENDANTS</u>**

Plaintiff names as defendants M. Berhane, Mr. Camps, and Mr. Miller, physician's assistants at the USPL; Dr. Tharp and Dr. McCollum, physicians at the USPL; John Doe, the Health Services Administrator at the USPL; Warden Gallegos at the USPL; Dr. MacMillan, a physician in private practice in Kansas; and the Overland Park Regional Medical Center. He sues all the personnel at the USPL in their official and individual capacities.

**<u>FACTUAL ALLEGATIONS</u>**

As the factual basis for his complaint, Mr. Jones alleges as follows. On May 25, 2005[2], he was playing basketball at the USPL when he seriously injured his right ankle as the result of a pothole on the basketball court. He requested medical attention and was taken to the infirmary within fifteen minutes of the injury. At the infirmary defendant Berhane made rude statements to plaintiff, failed to adequately examine his injury, and gave him Tylenol and an ice pack. The next day plaintiff was in excruciating pain and demanded medical treatment by a physician. Dr. Tharp examined him and advised him an appointment had been made for him at a medical center in Kansas City, but the contract between the medical center and the USPL had expired so he would have to shut up, take codeine and see the doctor in a couple weeks. For the next week, plaintiff

---

[2]
    Plaintiff does not allege the date his injury occurred, but the medical log provided by him states this date.

made numerous complaints to the USPL medical staff including several defendants, plus the warden and medical director regarding the "excruciating" pain.    On June 2, 2005, plaintiff was admitted through the emergency department to the Providence Medical Center for treatment and returned to USPL within one hour.  On that date defendant Dr. McCollum wrote a prescription for Tylenol with codeine #3 twice daily for 3 days, without examining plaintiff's injury.  On June 6, 2005, defendant Dr. MacMillan operated on plaintiff's right ankle to repair a fracture.    After the operation, plaintiff experienced a gradual decrease in sensitivity in his right toes and foot, pain up his leg into his right buttocks, a gradual decrease in movement and ability to walk, and extreme fear of losing function of his right leg.  Dr. MacMillan recommended plaintiff undergo therapy to regain use of his right foot, either at Overland Park Regional Medical Center or at the Medical Center for Federal Prisoners at Springfield, Missouri, and inquired of defendant Dr. McCollum as to the Bureau of Prisons' (BOP) willingness to pay for rehabilitative therapy for plaintiff[3].    Dr. McCollum made it clear that any treatment would be limited to the "least expensive to reset the right fibula," and no costly operations or therapy would be appropriate.  Dr. MacMillan acquiesced, for fear of losing his contract with the BOP, and refused to put his recommendation in writing.

Plaintiff also alleges that for "several weeks" following the operation, he experienced excruciating pain due to the fact he was

_____

[3]

Plaintiff alleges he was a party to a telephone conference between these two defendants and heard their statements over a speaker phone.

required to climb in excess of 250 feet to reach his assigned cell, and that he had to climb and descend the stairs three times a day for meals, and once for medication.  He further alleges he fell down the staircase at least 3 separate times.  On June 20, 2005, plaintiff's Unit Manager Sedillo at USPL wrote a memorandum to the Food Service Administration stating that plaintiff had ankle reconstruction surgery on June 9, 2005; was instructed by Dr. MacMillan to stay on bed rest with his leg elevated; Dr. MacMillan had entered the prison and put a cast on Jones' leg and redirected him to stay off his leg; that inmate Jones "should not walk at all for 30 days"; and Jones was due for additional surgery because "several screws fell out of his leg."  Sedillo requested that Food Service give plaintiff's meals to his cell mate for delivery to him until July 23, 2005.  During the week of June 20, 2005, plaintiff fell again and re-injured his right fibula.  Plaintiff received x-rays at the USPL, and complained for two weeks.  He again advised Sedillo that he could not climb the stairs, and requested a cell on the lower tier, which was denied.

Plaintiff's sister called the BOP Regional Office several times and Warden Gallegos in an attempt to get proper medical treatment and accommodations for her brother, but was rudely rebuffed by Warden Gallegos who threatened to have her arrested for terrorist threats.  Plaintiff alleges "several days thereafter" defendant Gallegos rudely informed him he was causing too much trouble and his medical bills were astronomical, so he was being transferred to a different facility.

**CLAIMS FOR RELIEF**

Plaintiff claims all defendants were deliberately indifferent; and the medical providers were negligent, and committed medical malpractice.   He seeks millions of dollars in compensatory and punitive damages.

## SCREENING

Because Mr. Jones is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief.   28 U.S.C. 1915A(a) and (b).   Having screened all materials submitted by Mr. Jones, the court finds the complaint is subject to being dismissed.

Mr. Jones has filed a Motion for order directing service upon defendants (Doc. 5).   However, the court shall not order service of process until the screening procedure is complete.   Accordingly, this motion will be denied without prejudice.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Plaintiff has not sufficiently pled exhaustion of administrative remedies in his complaint.   42 U.S.C. 1997e(a) directs: "No action shall be brought with respect to prison conditions under (any federal law) by a prisoner confined in any (correctional facility) until such administrative remedies as are available are exhausted."   See Booth v. Churner, 531 U.S. 956 (2001)(section 1997e(a) requires prisoners to exhaust administrative remedies irrespective of the relief sought and offered through administrative channels).   The United States Supreme Court has held

that this exhaustion requirement is mandatory and may not be disregarded by the court. <u>Porter v. Nussle</u>, 534 U.S. 516, 520 (2002). Exhaustion under Section 1997e(a) is a pleading requirement imposed upon the prisoner plaintiff. <u>Steele v. Federal Bureau of Prisons</u>, 355 F.3d 1204, 1210 (10th Cir. 2003), <u>cert</u>. <u>denied</u>, 543 U.S. 925 (2004). It follows that a complaint that fails to adequately plead exhaustion amounts to one that fails to state a claim upon which relief can be granted. <u>Id</u>.

To satisfy the PLRA's exhaustion requirement, a prisoner must do more than simply allege he has exhausted his administrative remedies. <u>Id</u>. The pleading requirement of 1997e(a) mandates that a prisoner either "attach a copy of the applicable administrative dispositions to the complaint, or . . . describe with specificity the administrative proceeding and its outcome." <u>Id</u>. The Tenth Circuit has also determined that "total" exhaustion is required. <u>Ross v. County of Bernalillo</u>, 365 F.3d 1181, 1188,-89 (10th Cir. 2004). Under the total exhaustion prerequisite, plaintiff must have presented each and every claim raised in his complaint by way of the available prison administrative grievance procedures, or the entire complaint is subject to being dismissed without prejudice. This generally means he must have referred to the named defendants and described allegedly wrongful actions by each of them in his grievances.

The Bureau of Prisons has a four-level administrative remedy system codified at 28 C.F.R. §§ 542.10 to 542.16. At the first level, an inmate must attempt informal resolution with prison staff. 28 C.F.R. § 542.13. Next, an inmate must submit a formal request for Administrative Remedy on a BP-9 form ("BP-9") within 20 calendar

days of the precipitating event.  28 C.F.R. § 542. 14(a).  A request or appeal is considered "filed" on the date it is logged into the "Administrative Remedy Index" as received.  28 C.F.R. § 542.18.  If not satisfied with the Warden's response to his BP-9, an inmate may file a BP-10 form with the appropriate Regional Director within 20 calendar days of the date the Warden signed the response.  Finally, an inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate BP-11 form to the General Counsel within 30 calendar days of the date the Regional Director signed the response.  28 C.F.R. § 542.15.  An inmate has not exhausted his administrative remedies until he has filed a remedy request at each level, within the established time frames.

The time limits for grievances may be extended upon request when the inmate demonstrates a valid reason for delay.  28 C.F.R. § 542.14(b).  Valid reasons for delay includes situations which prevented the inmate from submitting the request within the established time frame.  Id.  If an inmate fails to comply with the time limits set forth in 28 C.F.R. § 542 or obtain an extension, he has not properly exhausted his administrative remedies.  See Minor v. Gunja, ___ F.Supp.3d ___, 2006 WL 1795128 (D.Colo. June 27, 2006), citing Ross, 365 F.3d at 1186.

Procedural default applies to the exhaustion of administrative remedies requirement.  Ross, 365 F.3d at 1186; Patel v. Fleming, 415 F.3d 1105, 1109 (10th Cir. 2005).  "A prison procedure that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted.  Regardless of whether a prisoner goes through the formality of submitting a time-barred grievance, he may not successfully argue that he has exhausted his administrative

remedies by, in essence, failing to employ them." Id. at 1109, quoting Ross 365 F.3d at 1186; cf., Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) (prison's failure to provide a timely response to an inmate's grievance makes that administrative remedy unavailable). When an inmate fails to submit an administrative remedy request in a timely manner, the court should not consider the complaint. See Ross, 365 F.3d at 1186.

Plaintiff exhibits two "Informal Attempts to Resolve", or BP-8's, submitted by him. Both are marked as received on July 10, 2005. In the form apparently given the grievance number 382483, Mr. Jones stated Dr. McMillan had recommended he receive physical therapy for his foot and ankle, but Dr. Thorpe[4] told him there was nothing she could do and he wouldn't need it. Complaint (Doc. 1) Exhibit C-2. Plaintiff complained about the improper diagnoses and delay in treatment prior to his surgery by Dr. Thorpe and Dr. McCollum, and requested transfer to Springfield Medical Facility for therapy. Two other exhibits indicate that a BP-9[5] grievance and a BP-10 regional appeal submitted by him following this BP-8 were rejected as not on proper forms and untimely[6]. Id., Exhs. C-6,4,7. Plaintiff does not allege that he requested an extension of time to

_____

[4]

Dr. Tharp is named as defendant in the complaint, so the court assumes Dr. Thorpe is the same person as Dr. Tharp, and Dr. Tharp is the correct spelling of this person's name.

[5]

In his BP-9, plaintiff added Warden Gallegos and the Hospital Administrator as persons he had talked to in his attempts to be sent to Springfield for therapy.

[6]

28 C.F.R. 542.14(a) provides that the "deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred.

file this grievance[7] or appeal.

Plaintiff's other "Informal Attempt to Resolve" was apparently assigned Grievance number 382482.  This BP-8 contained many more of the claims raised in the complaint.  Id., Exh. C-11.  In this grievance, Mr. Jones complained he was denied prompt medical treatment for his broken ankle, and his injury was more serious as a result.  He also complained that Dr. McCollum made a "bogus diagnosis" over the phone without looking at x-rays, and P.A. Berhane mis-diagnosed his ankle as sprung rather than broken. Additional hand written pages exhibited next in the file (Id. Exhs. C-12,13,14) are not referred to in the form BP-8.  However, assuming they were attached to this grievance, they provide that after being seen for his injury plaintiff was sent to his cell with pain medication only, and sought treatment again in a couple days due to excruciating pain, but P.A. Miller told him he could do nothing more.  The following day plaintiff returned for medical attention due to the pain, and P.A. Cam[8] took x-rays revealing plaintiff's foot was broken.  P.A. Cam called Dr. McCollum who instructed him to put a cast on plaintiff's foot.  The next day plaintiff again sought medical attention because of severe swelling and pain, and was seen by P.A. Miller who cut off the cast and took more x-rays because the originals had been lost.  Plaintiff then was sent to Providence

---

[7]

Although it is possible that Plaintiff has procedurally defaulted his unexhausted claims, any finding regarding procedural default of administrative remedies would be premature since the BOP can grant an extension upon a showing of certain circumstances. See 28 C.F.R. § 542.14(a) and (b).

[8]

P.A. Camps is named defendant in the caption; however, the court assumes P.A. Cams is the same person.  Plaintiff must assure that the court has the proper spelling of the defendants' names.

Hospital where he received a shot of morphine for pain, and more x-rays were taken.  The doctor at Providence told him his injury was worse because he had hopped around on his foot for 4 or 5 days, his foot had "slipped completely off its axis," and screws and a plate would be needed to repair his foot.  He was returned to USPL, where Dr. McCollum and Dr. Thorpe delayed arranging surgery for 4 or 5 more days.  Only after plaintiff's sister called the Duty Warden, was plaintiff sent to Dr. MacMillan outside the prison, who x-rayed his foot, immediately sent him to the Overland Park Hospital, and scheduled him for surgery.  He also claimed that Dr. MacMillan ordered him to remain in bed until his next appointment in 10 to 14 days and recommended therapy, but neither Dr. Thorpe nor Dr. McCollum at the USPL would write an order excusing him from walking to chow hall.  He asked Dr. Thorpe to send him to Springfield for therapy, but was told "'no' by the same people" who disregarded his need for medical care and committed malpractice.  The relief he sought in his grievance was to be sent to Springfield for treatment and an order allowing him to eat in his cell.  Other exhibits indicate plaintiff's BP-9 following this BP-8 was received on July 14, 2005, (Id. Exhs. C-15, 16) and his BP-10 (Id. Exh. C-10) was received on August 2, 2005, and both were rejected as untimely.

That plaintiff's grievances were denied as untimely amounts to procedural default, and does not excuse his failure to exhaust. Further, no exhibit of a BP-11 appeal is provided or described as to either grievance.  An inmate that begins the administrative procedure but does not complete it has not adequately exhausted. Jernigan, 304 F.3d at 1032.  The court finds plaintiff's own exhibits indicate he has not fully or properly exhausted his

administrative remedies.

Moreover, plaintiff does not show that he raised every claim in his complaint against all named defendants in his grievances at all levels of the administrative grievance process.  In this Circuit, the presence of an unexhausted claim requires dismissal of the entire action, not just the defective claim.  Ross, 365 F.3d at 1189-92; see Simmat v. U.S. Bureay of Prisons, 413 F.3d 1225, 1237 (10th Cir. 2005).  For example, in his BP-8s, plaintiff did not make a specific claim that Warden Gallegos or the Health Services Administrator at the USPL were aware of his requests for medical attention prior to surgery and allowed the negligent treatment or medical malpractice allegedly inflicted on plaintiff, or negligently supervised the prison employees so as to allow the injuries, as plaintiff now alleges in his complaint against these defendants. Nor is there any discussion of plaintiff being required to walk stairs against doctor's orders, falling three times, re-injury, and his being refused a cell on a lower level.  The only relief sought by plaintiff through the administrative process was a transfer to Springfield and an order for meals delivered to his cell.

Unless plaintiff provides evidence of exhaustion not submitted in his initial complaint, or alternatively, evidence that administrative procedures were unavailable in the prison, or that he was somehow prevented from utilizing whatever procedure was available, his federal claims alleged against defendants must be dismissed, without prejudice, for failure to state a claim. Fitzgerald v. Corrections Corp. of America, 403 F.3d 1134, 1140 (10th Cir. 2005).  Plaintiff shall be given time to adequately plead exhaustion.

11

**JURISDICTION**

Plaintiff invokes jurisdiction under 28 U.S.C. §§ 1331, 1332(a)(1), and 28 U.S.C. § 1346(a)(2). A party seeking to invoke federal jurisdiction has the duty to establish that such jurisdiction exists. Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974). Since federal courts have limited jurisdiction, there is a presumption against jurisdiction. Id. When a court lacks jurisdiction, it must dismiss the proceeding with prejudice.

Jurisdiction under 28 U.S.C. 1332(a)(1), which provides that the district courts have jurisdiction over all civil actions where the matter is controversy exceeds the sum of $75,000, and is between citizens of different States, is not clear from the face of the complaint[9]. For purposes of diversity jurisdiction, a prisoner is presumed to be a citizen of the state of which he was a citizen before his incarceration, even if he is subsequently incarcerated in another state. Smith v. Cummings, 445 F.3d 1254, 1260 (10th Cir. 2006). Plaintiff does not allege of which state he is a citizen, and thus complete diversity of citizenship between the parties has not been established. Plaintiff shall be given time to provide information as to his State citizenship including his address prior to incarceration.

Plaintiff also asserts jurisdiction under 28 U.S.C. 1346(a)(2). This section provides the district courts with jurisdiction over

---

[9]
    Unless plaintiff establishes diversity jurisdiction, he does not allege a basis for this federal court's jurisdiction over Dr. MacMillan, a doctor in private practice in the state of Kansas, or over the Overland Park Regional Medical Center, a private entity.

actions against the United States for claims "not exceeding $10,000 in amount." Plaintiff's complaint is not expressly against the United States, as it is not named as a defendant. Moreover, plaintiff's asserted claims for damages far exceed $10,000. Thus, the court is not shown to have jurisdiction under 28 U.S.C. 1346(a)(2).

Plaintiff's assertion of jurisdiction under 28 U.S.C. § 1331 is not clearly supported by the allegations of the complaint. Section 1331 provides jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." Plaintiff does not cite any federal constitutional amendment or federal law as the basis for his cause of action. This matter will be discussed further in conjunction with plaintiff's failure to state a claim of constitutional violation.

Plaintiff shall be given time to amend or supplement his complaint to assert a proper basis for this court's jurisdiction over his claims against all defendants.

**FTCA**

28 U.S.C. 1346(b)(1) is the jurisdictional statute for claims against the United States under the Federal Tort Claims Act, 28 U.S.C. 2671, et seq. (FTCA)[10]. However, in an FTCA lawsuit the only proper defendant is the United States. This action is not treated as one under the FTCA, even though it seems the most appropriate

---

[10] The order transferring this case to this district (Doc. 4) mentioned the FTCA, but the FTCA is not cited in plaintiff's complaint. Plaintiff's claims of malpractice and negligence by federal employees acting within the scope of their federal employment would properly be raised in a FTCA complaint.

cause of action for plaintiff's claims against the federal officials, because plaintiff has not named the United States as defendant, all named defendants are not proper defendants in a FTCA suit, and the FTCA is not cited as the basis for this action.

Furthermore, the FTCA also contains an exhaustion requirement for tort claims asserted against the United States. 28 U.S.C. § 2675(a). Under that statute:

> An action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . . .

28 U.S.C. § 2675(a). The prohibition on bringing a FTCA action before exhaustion is complete is similar to the prohibition of bringing an action that is unexhausted under 42 U.S.C. § 1997e(a). Thus, Mr. Jones is required to exhaust the administrative scheme contained in the Federal Tort Claims Act before asserting any claims under that Act. He does not allege that he has submitted a claim under the FTCA, which has been denied as required by 28 U.S.C. 2675(a).

Plaintiff is emphatically warned that this particular exhaustion requirement is jurisdictional, so that if plaintiff does not timely submit a proper administrative claim under the FTCA to the appropriate agency in accordance with the statutes governing FTCA claims, the district court will lack jurisdiction to hear his FTCA complaint.

If plaintiff wishes this action to proceed under the FTCA, he must file an amended complaint naming the United States as the sole defendant and showing timely exhaustion of the administrative remedy under the FTCA. Otherwise, his claims are not construed as arising

14

under the FTCA.

**FAILURE TO STATE A CLAIM**

     Plaintiff states no claim against defendants in their official capacities.  When confronted with a suit against federal officials acting in their official capacity, the court must determine at the outset whether the Government has waived sovereign immunity. "Absent a waiver[11], sovereign immunity shields the Federal Government and its agencies (and agents) from suit." Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255 (1999).  Plaintiff brings this action against defendants in their individual and official capacities. However, there is no official capacity claim available in a federal civil rights action, since it would operate as a suit against the United States.  See Kentucky v. Graham, 473 U.S. 159, 166 (1985)("A plaintiff seeking to recover on a damages judgment in an official capacity suit must look to the government entity itself"); see Monell v. Dep't of Soc. Serv. of New York, 436 U.S. 658, 691 (1978); Simmat, 413 F.3d at 1231; Munk v. Fed. Land Bank of Wichita, 791 F.2d 130, 132 (10 Cir. 1986).  Therefore, plaintiff's claims for money damages against defendants in their official capacity should be dismissed based upon immunity from suit.  28 U.S.C. 1915A(b)(2).

     Plaintiff's factual allegations fail to state a federal constitutional violation, and therefore fail to state a claim under 28 U.S.C. 1331.  As noted, Section 1331 provides jurisdiction for claims arising under the Constitution, laws or treaties of the

---

[11]

Waiver of governmental immunity will not be implied, and any such waiver must be narrowly construed in favor of the sovereign.  See Lane v. Pena, 518 U.S. 187, 192 (1996).

United States.    Plaintiff  repeatedly  accuses  defendants  of
malpractice  and  negligence,  and  occasionally  generally  alleges
"deliberate  indifference"  to  his  "serious  medical  needs"  by  some
defendants (Complaint, Doc. 1, at 11, 12).

Plaintiff's  allegations  might  be  construed  as  attempting  to
state  a  claim  under  the  Eighth  Amendment.    The  Eighth  Amendment
prohibits  the  government  from  incarcerating  prisoners  without
providing  adequate  medical  care.    See  Oxendine  v.  Kaplan, 241 F.3d
1272, 1276 (10th Cir. 2001). "Prison officials violate the Eighth
Amendment  when  they  are  deliberately  indifferent  to  the  serious
medical needs of prisoners in their custody."  Perkins, 165 F.3d at
811, citing Estelle v. Gamble, 429 U.S. 97, 104-06,(1976); Simmat,
413 F.3d at 1231.

Plaintiff alleges the "deliberately indifferent" language in a
conclusory  fashion,  but  his  factual  allegations  in  the  complaint
support  tort  claims  rather  than  an  Eighth  Amendment  constitutional
violation.    Plaintiff  alleges  he  sought  and  received  frequent
medical  attention  at  the  USPL,  but  improper  diagnoses,  delays,  and
a  disagreement  of  the  need  fora  a  transfer  to  receive  therapy  have
caused  him  injury.

Medical  malpractice  or  negligence  does  not  become  a
constitutional  violation  merely  because  the  victim  is  a  prisoner.
Estelle, 429 U.S. at 106-07; Self v. Crum, 439 F.3d 1227, 1233 (10th
Cir.  2006);  Parratt  v.  Taylor,  451  U.S.  527,  548  (1981).
Furthermore,  a  delay  in  providing  medical  care  does  not  violate  the
Eighth  Amendment  unless  there  has  been  deliberate  indifference
resulting  in  substantial  harm.    Olson v. Stotts, 9 F.3d 1475 (10th
Cir. 1993).

Conclusory allegations of deliberate indifference are not sufficient to state a claim of constitutional deprivation. Deliberate indifference to serious medical needs must be evidenced by proof that corrections personnel intentionally denied, delayed access to or interfered with prescribed treatment. Id., at 104-06. Under this standard, an inmate must show more than a negligent or inadvertent failure to provide adequate medical care and more than a mere difference of opinion between the inmate and the correctional facility's medical staff regarding the proper course of treatment. Smart v. Villar, 547 F.2d 112, 114 (10th Cir. 1976). While the judgment of medical personnel which results in the deprivation of medical treatment may give rise to an action in tort for malpractice or negligence, it does not rise to a federal constitutional violation. Estelle, 429 U.S. at 105-06. A prison official cannot be found liable under the Eighth Amendment unless the official knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Plaintiff will be given time to allege sufficient facts to state a federal constitutional claim, and not simply malpractice and negligence, if that is his intent. Otherwise, jurisdiction under 28 U.S.C. 1331 is not supported.

Plaintiff fails to allege facts or legal authority indicating this court has jurisdiction over malpractice or negligence claims against a doctor in private practice in Kansas and the Overland Park Medical Center, an allegedly private entity. This court is not shown to have jurisdiction over such claims under 28 U.S.C. 1331. An action against private individuals or entities for torts such as negligence or malpractice is a matter of state, not federal law.

17

**PERSONAL PARTICIPATION**

An individual cannot be held liable in a federal civil rights action unless he personally participated in the unlawful acts upon which the complaint is based.  See <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976)(defendants in <u>Bivens</u> action dismissed if no personal involvement or participation in alleged unconstitutional actions); <u>Kite v. Kelly</u>, 546 F.2d 334, 337 (10th Cir. 1976).  The court finds no statement of any wrongful acts attributable to or occurring at the Overland Park Regional Medical Center where plaintiff's surgery was performed by Dr. MacMillan, or on the part of Dr. MacMillan. Plaintiff seems to name the Medical Center solely on the basis that it carries medical malpractice insurance.  Plaintiff does not allege that either of these defendants personally denied his requests for medical treatment, mis-diagnosed his injury, or delayed proper treatment.  The action against these defendants is subject to being dismissed for failure to state a claim.  Plaintiff shall be given time to supplement his complaint with allegations indicating personal participation on the part of these defendants.

For all the foregoing reasons, this court finds this action is subject to being dismissed under 28 U.S.C. 1915A.

**IT IS THEREFORE ORDERED** that plaintiff's motion for order requiring service of process on defendants (Doc. 5) is denied, without prejudice.

**IT IS FURTHER ORDERED** that plaintiff is granted twenty (20) days to amend or supplement his complaint and to show cause why this action should not be dismissed, in accordance with the foregoing Memorandum and Order.  If plaintiff fails to respond within the time

prescribed by the court, this action may be dismissed without further notice.

**IT IS SO ORDERED**.

Dated this 4th day of August, 2006, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge