IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


COREY D. JONES,

                    Plaintiff,

          v.                              CASE NO.  06-3200-SAC

M. BERHANE, et al.,

                    Defendants.

<u>MEMORANDUM AND ORDER</u>

     This civil complaint alleging inadequate medical treatment was
filed by an inmate who is a resident of the State of Indiana,
against defendants who are residents of the State of Kansas.  The
stated bases for the lawsuit are negligence and medical malpractice.
Most  defendants  were  federal  employees  at  the  United  States
Penitentiary,  Leavenworth,  Kansas  (USPL)  where  plaintiff  was
confined  at  the  time  his  injury  was  sustained.   Plaintiff  is
currently confined at the United States Penitentiary, Terre Haute,
Indiana.


<u>DEFENDANTS</u>

     Plaintiff names as defendants physician's assistants at the
USPL - M. Berhane, Mr. Camps (aka Cam), and Mr. Miller; physicians
at the USPL - Dr. Tharp and Dr. McCollum; the Health Services
Administrator (HSA) at the USPL - John Doe; USPL Warden Gallegos; a
private physician in Kansas - Dr. MacMillan; and the Overland Park

Regional Medical Center in Overland Park, Kansas (hereinafter OPMC).
He sues all the personnel at the USPL in their official and
individual capacities.


**FACTUAL ALLEGATIONS**

Plaintiff alleges he seriously injured his right ankle while
playing basketball at the USPL on May 25, 2005[1].  Plaintiff further
alleges he immediately went to the prison hospital, where he was
examined by P.A. Berhane.  Defendant Berhane ordered x-rays, gave
him crutches and a pain reliever, and sent him to his cell thinking
it was a bad sprain.  In 2 to 3 days, plaintiff had two inmates
carry him back to the prison hospital because of excruciating pain
and swelling and discoloration of his foot.  He was examined by P.A.
Miller, who said there wasn't much he could do.  Mr. Jones returned
the next day and was examined by defendant P.A. Cam who took x-rays,
which clearly revealed the ankle was broken.  Cam consulted by
telephone with defendant Dr. McCollum, and was instructed to put a
cast on plaintiff's foot.  Plaintiff was provided a cast, pain
medication and crutches, and returned to his cell.  The next day,
recorded in the prison medical log as June 1, 2005, plaintiff
returned to the prison hospital in severe pain, where defendant P.A.
Miller cut off the cast and took new e-rays because the ones taken
by Cam were lost.  Plaintiff was sent as an emergency to Providence

---

[1]

Plaintiff does not allege the date his injury occurred, but the medical log provided by him
indicates this date.  Plaintiff alleged in his complaint that he stepped in a pot hole on the basketball
court, but in his administrative grievance he stated he landed on another player's foot.

Hospital, where he was given a shot of morphine, x-rayed and returned to USPL, according to a medical log entry by defendant Dr. Tharp.   On June 2, 2005, defendant Dr. McCollum recorded that plaintiff was to be scheduled with Dr. Maguire for an operation "as soon as possible."  Plaintiff was examined by Dr. Maguire on June 2, 2005, whom he alleges observed his injury was worse due to his hopping around for several days.   Dr. Maguire said Leavenworth officials would schedule surgery, and plaintiff was returned to USPL.   Plaintiff alleges Dr. McCollum and Dr. Tharp delayed scheduling surgery for the next 4 to 5 days[2], until his sister called prison officials and complained.  After that, he was taken to see Dr. McMillan who x-rayed his injury, immediately scheduled him for surgery, and sent him to the Overland Park Medical Center.  On June 6, 2005, defendant Dr. MacMillan operated on plaintiff to repair the fracture.  Plaintiff alleges Dr. McMillan ordered that he stay off his foot and in bed after surgery, but neither Dr. McCollum nor Dr. Tharp would write an order at the prison excusing him from walking.

Plaintiff further alleges that for "several weeks" following his surgery, he was required to climb and descend over 250 feet of stairs to reach his assigned cell four times a day for meals and medicine contrary to Dr. MacMillan's post-surgery orders, and that he experienced excruciating pain as a result.  He also alleges he fell down the stairs at least three times.  He claims that during

---

[2]     Plaintiff also alleges he was informed there was a problem with the contract with Providence Hospital, which would cause some delay.

one fall he re-injured his right fibula, was x-rayed at the USPL, complained, and requested a cell on the lower tier.  He states Unit Manager Sedillo at USPL requested in writing that the Food Service Administration give plaintiff's meals to his cellmate for delivery to him due to his surgery and doctor's instructions.  He then alleges that within a few days he was transferred to a different facility.

Plaintiff asserts all named defendants were deliberately indifferent; and the medical providers were negligent and committed medical malpractice.  He seeks millions of dollars in compensatory and punitive damages.

## SCREENING

In the court's prior show cause order dated August 4, 2006, Mr. Jones was informed that this court, upon screening, found the complaint was subject to dismissal for failure to adequately plead exhaustion of administrative remedies and failure to state a claim for reasons set forth in that Memorandum and Order.  Plaintiff was given time to show cause why the complaint should not be dismissed, and has filed a Response.  Having carefully considered the Response and attachments and having reviewed all materials in the file, the court finds as follows.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Plaintiff was informed in the court's show cause order of the

requirements under 42 U.S.C. 1997e(a) and the controlling case law
that prison administrative remedies be fully and totally exhausted
on all his claims.   See Booth v. Churner, 531 U.S. 956
(2001)(section 1997e(a) requires prisoners to exhaust administrative
remedies irrespective of the relief sought and offered through
administrative channels); Porter v. Nussle, 534 U.S. 516, 520
(2002); Steele v. Federal Bureau of Prisons, 355 F.3d 1204, 1210
(10th Cir. 2003), cert. denied, 543 U.S. 925 (2004)(Exhaustion under
Section 1997e(a) is a pleading requirement imposed upon the prisoner
plaintiff, and a complaint that fails to adequately plead exhaustion
fails to state a claim).   The Bureau of Prisons four-level
administrative remedy system codified at 28 C.F.R. §§ 542.10 to
542.16 was set forth, and plaintiff was directed to demonstrate he
had fully utilized this established process.   The court noted the
provision allowing time limits to be extended upon request when the
inmate demonstrates a valid reason for delay, including situations
which prevented the inmate from submitting the request within the
established time frame.   28 C.F.R. § 542.14(b).   Plaintiff was
cautioned that if he had failed to comply with the time limits set
forth in 28 C.F.R. § 542 or obtain an extension, he has not
exhausted his administrative remedies.   See Ross v. County of
Bernalillo, 365 F.3d 1181, 1186 (10th Cir. 2004).

Plaintiff concedes in his Response that he did not fully plead
exhaustion in the complaint in accord with the standards set forth
by the court. He now provides an additional exhibit and arguments,
and asserts he should be held to have satisfied the exhaustion

requirement in his case.   From its review, the court finds the following facts with regard to exhaustion of administrative remedies.

Plaintiff's exhibits show he submitted two BP-8 forms to officials at the USPL regarding his claims in this action.   In one BP-8 he sought a transfer to the BOP's Medical Center for Prisoners at Springfield, Missouri (Springfield) for therapy allegedly prescribed as necessary by Dr. McMillan (hereinafter therapy grievance).   In his other BP-8, he recounted the allegedly inadequate medical treatment provided at the USPL up to the time of his surgery and immediately thereafter including the failure of USPL officials to adhere to Dr. McMillan's post-surgery instructions to avoid walking (hereinafter malpractice grievance).

Mr. Jone's BP-8 form grievance on malpractice has the date of June 12, 2005, next to his signature, which was 3 days after his surgery.   However, it is also dated as received by prison officials on July 10, 2005, and as returned on July 10, 2005.   Thus, the date on which this BP-8 was actually submitted to prison officials by plaintiff is not evident from this document.   Mr. Jones alleges in his Response that he submitted his grievances in a timely manner, but Correctional Counselor Brown withheld or failed to proceed with them causing them to be untimely.   However, the BP-8 claiming malpractice is marked "informally resolved" and provides that arrangements were made for Mr. Jones to speak to the HSA regarding his claims.   Complaint (Doc. 1), Exh. C-11.   Plaintiff does not explain whether or not he spoke with the HSA or if his malpractice

grievance was not resolved as provided.

On June 12, 2005, the same date Mr. Jones signed his malpractice BP-8, he signed and dated a BP-9 grievance raising the same claims (Id. Exhs. C-15, 16).  This seems to suggest he did not wait for resolution of his BP-8 before submitting his BP-9. However, the BP-9 is dated as received by the Warden over a month later on July 14, 2005.  Plaintiff does not describe when he actually submitted his BP-8 and BP-9 forms, and how their submission conformed to the pertinent BOP regulations.  Plaintiff's BP-9 was rejected as untimely.  Plaintiff then submitted a BP-10 dated July 29, 2005, stating he was "not satisfied" with the Warden's response (Id. Exh. C-10).  This regional appeal is stamped as received on August 2, 2005, and was rejected on August 11, 2005, because the BP-9 was untimely.  Plaintiff presents no documentation or description showing either his grievances were timely or he followed the proper procedure to request extension of the time limits.

Plaintiff's BP-8 grievance requesting therapy after surgery has a date by his signature of June 23, 2005.  Complaint (Doc. 1) Exhibit C-2.  However, it too is dated as received and returned by prison officials on July 10, 2005.  No resolution is marked on this BP-8 form.  Plaintiff's BP-9 on his therapy claim is dated June 12, 2005, which is earlier than his BP-8, but is stamped as received by the Warden on July 14, 2005[3].  This BP-9 was rejected as untimely on

---

[3]
    The BP-9 exhibit is also stamped received on August 2, 2005, making it appear the BP-9 grievance was simply copied by plaintiff and mailed to the Regional Office as his BP-10.

July 14, 2005.  The response to the BP-10 dated August 11, 2005, stated it was received August 2, 2005, and rejected because the BP-9 was untimely and the BP-10 was not on proper forms.  Id., Exhs. C-6,4,7.

With his Response to this court, plaintiff has submitted a BP-11, or Central Office appeal, dated August 11, 2005, which stated he was "not satisfied" with the decisions on his BP-8, 9 and 10.  There is no grievance number on this BP-11 form and it is not clear whether it was an appeal of the therapy or the malpractice grievance.  It is not date-stamped as received, and no administrative response is described or exhibited.  Instead, plaintiff alleges he has received no response.  In this BP-11, Mr. Jones also stated his grievances were untimely because he went to the hospital for surgery, was on strong drugs, and Correctional Counselor Brown refused to turn in or answer his grievances on time.

Plaintiff's exhibits of grievances signed by him on June 12 and June 23, 2005, contradict his statement in his BP-11 and his allegations in his Response that he was incapacitated during the time provided for filing administrative grievances due to his hospitalization "and/or . . . heavy narcotic prescription".  Moreover, as noted, Mr. Jones does not allege or show that he followed proper procedures to request an extension of the time based upon his alleged incapacitation.  As plaintiff was previously informed, procedural default applies to the exhaustion of administrative remedies requirement.  Ross, 365 F.3d at 1186; Patel v. Fleming, 415 F.3d 1105, 1109 (10th Cir. 2005)("A prison procedure

8

that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted.  Regardless of whether a prisoner goes through the formality of submitting a time-barred grievance, he may not successfully argue that he has exhausted his administrative remedies by, in essence, failing to employ them.").

Plaintiff makes other arguments in support of his assertion that his claims should be treated as exhausted.  He disagrees that he must raise his claims in grievances with the factual specificity required by this court's prior order.  He also contends that if prison staff fails to respond within time limits, a prisoner may appeal to the next step; and if a prisoner receives no response at the final appeal level, he or she has exhausted.  He additionally argues the exhaustion requirement is not jurisdictional, and the "great majority of circuits have held that failure to exhaust is an affirmative defense that must be raised by defendants."  He asserts it is "extraordinarily dangerous" and unreasonable to hold that an untimely administrative appeal may bar an inmate from ever bringing a lawsuit on his unexhausted claims.

The court agrees that a prison official's failure to provide a timely response to an inmate's grievance or other hindrance of attempts to file a grievance may render the prison administrative remedy "unavailable."  Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002).  Plaintiff apparently would have the court extrapolate from his legal citations and arguments that he was hindered in his efforts to exhaust administrative remedies. However, he does not describe acts by prison officials on certain

dates or submit any documentation showing that prison officials either failed or refused to respond to grievances properly submitted by him.   Instead, his exhibits show he did not file some of his grievances on proper forms or in a timely manner, and that some informal resolution of his grievance claiming malpractice may have occurred, which is not described.   The court also finds plaintiff makes no showing he has presented his claims administratively that he fell on the stairs at least three times and re-injured his ankle due to officials at USPL ignoring Dr. McMillan's post-surgery orders and his unit manager's written request, or that his request for a cell on a lower level was wrongfully denied[4].   While these claims are related to the other claims raised by plaintiff, they involve separate incidents occurring at later dates.

The court concludes plaintiff has failed to adequately plead full and total exhaustion of his administrative remedies; and this complaint should be dismissed, without prejudice, as a result.   See Ross, 365 F.3d at 1186.   However, even if this court determined plaintiff had adequately pleaded exhaustion, or that his failure to exhaust was unclear so a responsive pleading on the issue was

---

[4]

As noted in the court's prior order, in this Circuit the presence of an unexhausted claim requires dismissal of the entire action not just the defective claim.  Ross, 365 F.3d at 1189-92; see Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225, 1237 (10th Cir. 2005).  In his BP-8s, plaintiff also did not claim that Warden Gallegos or the Health Services Administrator at the USPL were aware of his requests for medical attention prior to surgery and allowed any negligent treatment or medical malpractice, or that these administrators negligently supervised other defendants, as plaintiff now alleges in his complaint.  His only mention of these two defendants in his administrative grievances was he had talked to them about sending him to Springfield for therapy.

necessary, failure to exhaust is not the only reason the complaint was found to be subject to dismissal.


**FAILURE TO STATE A CLAIM**

In his complaint, plaintiff invoked jurisdiction under 28 U.S.C. §§ 1331, 1332(a)(1), and 1346(a)(2).  The court noted in its prior order that Section 1346(a)(2) provides the district courts with jurisdiction over actions against the United States for claims "not exceeding $10,000 in amount," and found plaintiff did not name the United States as defendant and his claims for damages far exceed $10,000.  Plaintiff has not responded to these findings, and the court holds it does not have jurisdiction over this action under 28 U.S.C. 1346(a)(2).

The court reiterates that plaintiff states no claim under 28 U.S.C. § 1331 against defendant federal employees in their "official capacities" because such a claim operates as a suit against the United States, which is barred by sovereign immunity.  See Kentucky v. Graham, 473 U.S. 159, 166 (1985)("A plaintiff seeking to recover on a damages judgment in an official capacity suit must look to the government entity itself"); see also Monell v. Dep't of Soc. Serv. of New York, 436 U.S. 658, 691 (1978); Simmat, 413 F.3d at 1231; Munk v. Fed. Land Bank of Wichita, 791 F.2d 130, 132 (10th Cir. 1986).  Therefore, the official capacity claims against all defendants are dismissed under 28 U.S.C. 1915A(b)(2).

In its prior Memorandum and Order, this court quoted 28 U.S.C. § 1331 as providing jurisdiction over civil actions "arising under

11

the Constitution, laws, or treaties of the United States," and found jurisdiction under this provision was not clearly supported by the factual allegations in plaintiff's complaint. The court noted plaintiff had not cited any federal constitutional provision or federal law as the basis for his cause of action, and gave plaintiff time to amend or supplement his complaint. The court also noted that Mr. Jones repeatedly accused defendants of malpractice and negligence in his complaint, and only occasionally made a conclusory allegation of "deliberate indifference" to his "serious medical needs." Complaint (Doc. 1) at 11, 12. The court advised plaintiff his factual allegations, even if construed as attempting to state an Eighth Amendment violation, were insufficient[5]. Plaintiff did not address these deficiencies in his Response.

Plaintiff was plainly advised in the court's prior show cause order that medical malpractice or negligence does not become a constitutional violation merely because the victim is a prisoner, Estelle v. Gamble, 429 U.S. 97, 106-07 (1976); Self v. Crum, 439

---

[5]

Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971), recognized a private right of action in favor of victims of constitutional violations committed by federal agents. Such victims are entitled to recover money damages from the agents in their individual capacities when there is neither a special factor counseling hesitation nor an explicit statutory prohibition nor an exclusive statutory alternative remedy. Id. at 396-97; Van Dinh v. Reno, 197 F.3d 427, 432 (10th Cir. 1999)); Farmer v. Perrill, 275 F.3d 958, 960 FN4 (10th Cir. 2001). However, there is no Bivens suit against a federal tortfeasor in his or her official capacity. Instead, any action that charges a federal official with wrongdoing while operating as a United States agent amounts to a claim against the United States. Weaver v. United States, 98 F.3d 518, 520 (10th Cir. 1996); Atkinson v. O'Neill, 867 F.2d 589, 590 (10th Cir. 1989). Nor may a Bivens claim be brought directly against the United States. FDIC v. Meyer, 510 U.S. 471, 484-85 (1994); Dahn v. United States, 127 F.3d 1249, 1254 (10th Cir. 1997). Furthermore, allegations of federal constitutional violations are required to state a claim under Bivens.

F.3d 1227, 1233 (10th Cir. 2006), <u>cert</u>. <u>denied</u>, ___U.S.___, 2006 WL

1591905 (Oct. 2, 2006), and of the following other legal standards.

When prison officials are deliberately indifferent to an inmate's

serious medical needs, they violate the inmate's right to be free

from cruel and unusual punishment under the Eighth Amendment.

<u>Estelle</u>, 429 U.S. at 104.   To prevail on a claim of deliberate

indifference, a prison inmate must meet the two-prong test

articulated by the Supreme Court in <u>Estelle</u>, which requires a

showing of serious medical needs and of deliberate indifference on

the part of prison officials.   <u>Farmer v. Brennan</u>, 511 U.S. 825,

831-33, 837 (1994).

A medical need is "serious' if it has been diagnosed by a

physician as one requiring treatment, or if it is so obvious that

even a lay person would easily recognize the need for a doctor's

attention.   <u>Riddle v. Mondragon</u>, 83 F.3d 1197, 1202 (10th Cir.

1996). Plaintiff's injury to his ankle, and his consequent need for

medical treatment, were undoubtedly serious under the above

standards.   The court's inquiry does not end, however, with the

finding of serious medical needs.   In order to proceed with an

Eighth Amendment claim, plaintiff must also demonstrate deliberate

indifference on the part of prison officials.   Conclusory

allegations of deliberate indifference are not sufficient.

Deliberate indifference to serious medical needs must be evidenced

by proof that corrections personnel intentionally denied, delayed

access to, or interfered with prescribed treatment.   <u>Estelle</u>, 429

U.S. at 104-06.   Thus, an inmate must show more than a negligent or

inadvertent failure to provide adequate medical care and more than
a mere difference of opinion between the inmate and the correctional
facility's medical staff regarding the proper course of treatment.
Id. at 104 ("[I]n the medical context, an inadvertent failure to
provide adequate medical care cannot be said to constitute 'an
unnecessary and wanton infliction of pain,' or to be 'repugnant to
the conscience of mankind,'" so as to fall afoul of the Eighth
Amendment.); Olson v. Stotts, 9 F.3d 1475 (10th Cir. 1993)(A delay
in providing medical care does not violate the Eighth Amendment
unless there has been deliberate indifference resulting in
substantial harm.); Smart v. Villar, 547 F.2d 112, 114 (10th Cir.
1976); see also Whitley v. Albers, 475 U.S. 312, 319 (1986); Medcalf
v. State of Kansas, 626 F.Supp. 1179, 1190 (D.Kan. 1986).   The
judgment of medical personnel which results in the deprivation of
medical treatment may give rise to an action in tort for malpractice
or negligence, but does not rise to a federal constitutional
violation.   Estelle, 429 U.S. at 105-06.   As the United States
Supreme Court stated, "a prison official cannot be found liable
under the Eighth Amendment . . . unless the official knows of and
disregards an excessive risk to inmate health or safety; the
official must both be aware of facts from which the inference could
be drawn that a substantial risk of serious harm exists, and he [or
she] must also draw the inference."   Farmer, 511 U.S. at 837.

      Plaintiff's factual allegations clearly indicate he sought and
received immediate and frequent medical attention for his injury at
the USPL.   His complaints of initial mis-diagnoses, delays in

scheduling surgery, his disagreement with USPL medical staff regarding his need for a transfer to Springfield for therapy[6], and denial of his requests to remain in his cell or be given a cell on a lower tier might support tort claims of negligence or malpractice. However, they are not sufficient to state a federal constitutional claim of cruel and unusual punishment.  Medical decisions such as the ones plaintiff complains of in this case do not represent cruel and unusual punishment.  Estelle 429 U.S. at 107 ("[T]he question whether . . . additional diagnostic techniques or forms of treatment . . . is indicated is a classic example of a matter for medical judgment.").  Plaintiff may have desired additional, better, or different medical treatment, but the Eighth Amendment does not require it.  The court finds nothing in plaintiff's allegations indicates that defendants acted with a sufficiently culpable state of mind to constitute a violation of the Eighth Amendment.  The court therefore concludes that plaintiff's claims and factual averments are insufficient to state a claim under § 1331 and Bivens.

**DIVERSITY JURISDICTION**

Section 1332(a)(1), 28 U.S.C., provides that the district courts have jurisdiction over all civil actions where the matter in controversy exceeds the sum of $75,000, and is between citizens of

---

[6]

While plaintiff alleges Dr. McMillan ordered post-surgery bed rest and recommended therapy, he does not submit any documentation of any orders or prescriptions written by Dr. McMillan.  In fact, his allegation that these treatments were prescribed by Dr. McMillan is contradicted by allegations in his complaint that Dr. McMillan declined to put his recommendation for therapy in writing.

different States.  Jurisdiction under 1332(a)(1), was discussed in
the court's show cause order, and plaintiff was directed to allege
facts showing complete diversity.  Plaintiff addressed the diversity
issue by alleging in his Response that he is currently a citizen of
the State of Indiana.

Nevertheless, this court finds it does not have jurisdiction
over plaintiff's claims against the defendant federal employees
under § 1332(a)(1), again because any suit for money damages against
federal employees for actions taken within their employment is, in
essence, a suit against the United States barred by sovereign
immunity.  It follows that the only named defendants over which this
court might have diversity jurisdiction are the private defendants,
Dr. McMillan and OPMC.

The court advised plaintiff in its prior show cause order that
he failed to allege any facts in his complaint in support of claims
of malpractice or negligence against Dr. MacMillan and the OPMC.
Plaintiff was informed that his claims against these defendants were
subject to being dismissed as a result, but he was given time to
supplement his complaint with allegations indicating wrongful
actions on their part.  Plaintiff fails in his Response to allege
any additional facts to support a claim against either non-federal
defendant.  He thus has alleged no wrongful acts by either Dr.
McMillan[7] personally,  or  attributable  to  or  occurring  at  the

--------

7

The only allegations made concerning Dr. McMillan are as follows.  Plaintiff alleged Dr.
McMillan recommended he undergo therapy to regain use of his right foot, and inquired of Dr.
McCollum as to the BOP's willingness to pay for rehabilitative therapy for plaintiff.  However,

Overland Park Regional Medical Center where plaintiff's surgery was performed.   Plaintiff does not allege that either of these defendants denied any of his requests for medical treatment, mis-diagnosed his injury, delayed proper treatment, or improperly treated his injury.   The court concludes plaintiff has failed to show cause why the actions against the two private defendants should not be dismissed for failure to state a claim.

**FTCA CLAIM**

Plaintiff was advised in the court's prior show cause order that the Federal Torts Claim Act, 28 U.S.C. 2671, et seq. (FTCA), appeared to be the most appropriate cause of action for his claims alleging malpractice and negligence on the part of federal employees[8].   The FTCA essentially operates as a waiver of sovereign immunity when federal employees are negligent in the scope of their employment.   28 U.S.C. 1346(b)(1) is the jurisdictional statute for FTCA claims[9].   The court further informed plaintiff of the

---

plaintiff alleges defendant McCollum made it clear any treatment would be limited to the "least expensive to reset the right fibula," and no costly therapy would be appropriate.  He faults Dr. McMillan for allegedly refusing to put his recommendation in writing and speculates it was for fear of losing his contract with the BOP.  Mr. Jones further alleges that after the operation, he experienced a gradual decrease in sensitivity in his right toes and foot, pain up his leg into his right buttocks, a gradual decrease in movement and ability to walk, and extreme fear of losing function of his right leg.

[8]

The order transferring this case to this district (Doc. 4) mentioned the FTCA, but the FTCA was not referred to in plaintiff's complaint.

[9]

Section 1346(b)(1) allows claims for monetary damages against the United States for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." Section

exhaustion prerequisite for FTCA claims and quoted 28 U.S.C. §
2675(a):

> An action shall not be instituted upon a claim against the
> United States for money damages . . . unless the claimant shall
> have first presented the claim to the appropriate Federal
> agency and his claim shall have been finally denied by the
> agency in writing . . . .

Id.  Mr. Jones was advised that this exhaustion prerequisite is
jurisdictional, so that if he failed to timely submit a proper
administrative claim to the appropriate agency, the court would lack
jurisdiction to hear his FTCA complaint.  Plaintiff was further
advised his claims would not be construed as arising under the FTCA,
unless he filed an amended complaint naming the United States as the
sole defendant and showing timely exhaustion under the FTCA.

In response to this portion of the court's prior order
plaintiff alleges he has "now filed an administrative request for
damages under the FTCA."  He requests that this court "hold this
case in abeyance" until the administrative claim process has been
completed, or for 180 days.  As a general rule in FTCA actions a
premature complaint cannot be cured through amendment, but instead,
plaintiff is required to file a new lawsuit.  Allowing claimants to
bring suit under the FTCA before exhausting their administrative
remedies and to cure the jurisdictional defect by filing an amended
complaint would render the exhaustion requirement meaningless and
impose an unnecessary burden on the judicial system.  Duplan v.
Harper, 188 F.3d 1195, 1199 (10th Cir. 1999).  Pursuant to this

2674 "makes the United States liable to the same extent as a private person under like circumstances."
Wark v. United States, 269 F.3d 1185, 1187 (10th Cir. 2001).

controlling legal authority, the court finds it does not have jurisdiction over plaintiff's FTCA claim at this time and denies plaintiff's request for this case to be held in abeyance or stayed for 180 days.  Plaintiff must file a new complaint under the FTCA naming the United States as the sole defendant after he has completed the administrative process required by the FTCA.

For all the foregoing reasons, the court finds this action must be dismissed without prejudice, and all relief denied for failure to state a claim and for lack of jurisdiction.

**IT IS THEREFORE ORDERED** that this action is dismissed, without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to proceed without prepayment of fees (Doc. 2) is denied as moot.

**IT IS SO ORDERED.**

Dated this 8th day of November, 2006, at Topeka, Kansas.



s/Sam A. Crow
U. S. Senior District Judge